# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# ELKINS

**DOUGLAS OTTO FISCHER**,

    Plaintiff,

v.                                                    Civil Action No. 2:16-cv-90
                                                         (BAILEY)

**DR. CHERYL HILL,
DR. ABDEL MASSOUD,**
Chief Medical Officer,
William R. Sharpe, Jr. Hospital, and
**KIMBERLY WALSH,**
Former Interim Chief Executive Officer,
William R. Sharpe, Jr. Hospital,

    Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS COMPLAINT

Pending before this Court is Defendant Kimberly Walsh's Motion to Dismiss [Doc. 13] and Defendants, Cheryl Hill, M.D., Ph.D.'s and Abdel Massoud, M.D.'s Motion to Dismiss Complaint [Doc. 15], both filed on January 23, 2017. The plaintiff filed his Combined Response Opposing Defendants' Motions to Dismiss [Doc. 18] on February 3, 2017. The defendants filed their respective Reply briefs [Docs. 20, 21] on February 10, 2017. This matter is now ripe for adjudication. For the reasons that follow, this Court **GRANTS** the defendants' Motions to Dismiss **[Docs. 13, 15]**.

## BACKGROUND

Plaintiff filed this action in this Court on October 25, 2016, asserting federal question jurisdiction for claims brought pursuant to 42 U.S.C. § 1983 [Doc. 1 at ¶ 2]. Plaintiff

Douglas Otto Fischer ("Fischer") brings this action following his alleged unlawful confinement in the William R. Sharpe, Jr. Hospital ("Sharpe Hospital"). [Id. at ¶ 3]. Sharpe Hospital operates under the direction and control of the West Virginia Department of Health and Human Resources ("WVDHHR"), and is vested with treating individuals found not guilty of criminal charges by reason of mental illness pursuant to W. Va. Code § 27-6A-3. [Id. at ¶ 7].

Defendant Dr. Cheryl Hill ("Dr. Hill") was retained as a consulting psychiatrist by Sharpe Hospital. [Id. at ¶ 8]. Defendant Dr. Abdel Massoud ("Dr. Massoud"), was the Clinical Director of Sharpe Hospital at all relevant times [Id. at ¶ 9]. Defendant Kimberly Walsh ("Walsh") is the former Interim CEO of Sharpe Hospital. [Id. at ¶ 10]. All three are being sued in their individual capacity. [Id.].

On April 10, 2015, Fischer entered a plea of not guilty by reason of mental illness in the Circuit Court of Harrison County, West Virginia, to two felony charges and one misdemeanor charge following an incident at his home. [Id. at ¶ 15]. Plaintiff was sentenced to be committed to Sharpe Hospital in order to undergo a Forensic Psychiatry Evaluation pursuant to W.Va. Code § 27-6A-4. [Id. at ¶¶ 15, 17]. Plaintiff self-reported to the Hospital on May 14, 2015, and Dr. Hill completed her Forensic Evaluation Dangerousness Report ("the Report") on June 16, 2015. [Id. at ¶¶ 16-17]. Dr. Hill's Report found that at the time of the incident leading to his arrest, plaintiff was acutely psychotic with hallucinations and delusions, and that these symptoms were attributable solely to a side effect of a medication. [Id. at ¶ 18]. The Report further indicated that the plaintiff was psychiatrically stable, with no concerning behaviors, no additional episodes of hallucinations since April 1, 2014, and that the side-effect had completely resolved. [Id. at

2

¶¶ 19, 20]. As a result, Dr. Hill recommended the plaintiff receive a "step down" into a lower level of security at Sharpe Hospital. [Id. at ¶ 21].

The Court held a hearing on July 27, 2015, at which Dr. Massoud adopted Dr. Hill's recommendation and reported the same to the Court. [Id. at ¶¶ 22, 27]. The same day, the Court ordered plaintiff's release, and he was released the next day, July 28, 2015. [Id. at ¶¶ 28-29].

Based upon the above, the plaintiff alleges the following causes of action:

- **Count 1:** Violation of the plaintiff's right to be free from cruel and unusual punishment under the Eighth Amendment, pursuant to 42 U.S.C. § 1983;
- **Count 2:** Violation of the plaintiff's right to liberty without due process under the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983;
- **Count 3:** Conversion of personal belongings deposited with the Hospital upon commitment;
- **Count 4:** Trespass to Chattels;
- **Count 5:** Intentional Infliction of Emotional Distress; and
- **Count 6:** Reckless Infliction of Emotional Distress.

On January 23, 2017, the defendants filed the instant Motions to Dismiss [Docs. 13, 15], arguing that the plaintiff did not plead sufficient facts to state a claim upon which relief can be granted, and that the defendants are entitled to absolute and qualified immunity.

## **LEGAL STANDARD**

In reviewing the sufficiency of a complaint under Fed. R. Civ. P. 12(b)(6), a district court must accept the factual allegations in the complaint as true. ***Zak v. Chelsea***, 780

F.3d 597, 601 (4th Cir. 2015)(citing *Matrix Capital Mgmt. Fund, LP v. Bearing Point, Inc.*, 576 F.3d 172, 176 (4th Cir. 2009)). While a complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Indeed, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

A complaint must be dismissed if it does not allege "'enough facts to state a claim to relief that is *plausible* on its face.' *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007) (emphasis added)." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This requires "more than a sheer possibility that a defendant has acted unlawfully." *Id*. However, when reviewing the sufficiency of a complaint, a court may also consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). A court may consider documents attached to a motion to dismiss when they are "integral to and explicitly relied on in the complaint and . . . the plaintiffs do not challenge [their] authenticity." *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the

applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). "But in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)," so long as "all facts necessary to the affirmative defense 'clearly appear[] on the face of the complaint.'" *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (quoting *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)). The Supreme Court of the United States has repeatedly stressed "the importance of resolving immunity questions at the earliest possible stage in litigation . . . ." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991); see *Brockington v. Boykins*, 637 F.3d 503, 506 (4th Cir. 2011) ("Although a motion pursuant to Rule 12(b)(6) invites an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses to the claims therein, dismissal nevertheless is appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense.").

## **DISCUSSION**

Defendants contend that the plaintiff has failed to state valid § 1983 claims, or in the alternative, that they are entitled to absolute and qualified immunity. Further, they argue that the plaintiff has failed to state plausible claims of intentional/negligent infliction of emotional distress, conversion, and trespass to chattel.

### A.   **Immunities Generally**

The Supreme Court of Appeals of West Virginia has recently noted the complexities involved when addressing claims of immunity:

> We begin our analysis by observing that, admittedly, our caselaw analyzing and applying the various governmental immunities – sovereign, judicial,

5

quasi-judicial, qualified, and statutory – to the vast array of governmental agencies, officials, employees and widely disparate factual underpinnings has created a patchwork of holdings. These various holdings against which each particular set of facts must be analyzed lead inevitably to a situation where some allegations fit more comfortably with certain syllabus points than others. Much of the absence of harmony is simply the nature of the beast: immunities must be assessed on a case-by-case basis in light of the governmental entities and/or officials named and the nature of the actions and allegations giving rise to the claim. *See* Syl. Pt. 9, *in part*, **Parkulo [v. West Virginia Bd. of Probation and Parole]**, 199 W. Va. 161, 483 S.E.2d 507 [(1996)] ("The existence of the State's immunity [] must be determined on a case-by-case basis."). As such, we will examine the claims in the case sub judice under the scope of the particular qualified immunity holdings which most accurately conform to the nature of the particular allegations.

**West Virginia DHHR v. Payne**, 231 W. Va. 563, 571, 746 S.E.2d 554, 562 (2013).

### 1.   Quasi-Judicial Immunity / Absolute Immunity

Absolute immunity has been long recognized for certain officials both at common law and under 42 U.S.C. § 1983 on the basis that it was necessary in order to protect the official in the execution of his or her duties. Under common law, judges and prosecutors received absolute immunity for duties executed within the scope of the judicial process. In the past, the Fourth Circuit has extended absolute immunity to court-appointed guardians *ad litem* for acts occurring within the judicial process. **Fleming v. Asbill**, 42 F.3d 886, 889 (4th Cir. 1994); **Vosburg v. Dep't of Soc. Servs.**, 884 F.3d 133 (4th Cir. 1989). "The doctrine of quasi-judicial immunity applies to non-judicial officers performing tasks so integral or intertwined with the judicial process that these persons are considered an arm

6

of the judicial officer who is immune." **Ward v. Plymale**, 2013 WL 6164277 (S.D. W.Va. Nov. 25, 2013)(internal quotations and citations omitted).

Plaintiff argues in his combined response that the defendants are not entitled to absolute immunity for their roles in the alleged violations of his constitutional rights because they were not engaged in a judicial function. Plaintiff cites to **Brown v. Smith**, 56 F.Supp.3d 910 (N.D. Ill. 2014), to support his position. **Brown** is distinguishable for two important reasons: (1) the defendant was not court-appointed and (2) he provided false information to the court. As previously noted, the defendants in this case were court appointed to conduct a dangerousness evaluation pursuant to West Virginia's statutory scheme and there is no allegation that false information was provided to the court; indeed, the evaluation was favorable to the plaintiff.

Plaintiff next argues that the defendants' roles were not "intimately associated" with a judicial function and that there was no pending hearing or trial as the plaintiff had already been adjudicated as not guilty by reason of mental disease or defect. This is flawed for several reasons. First, there was a pending hearing at which the defendants were to report their findings to the court. This is required by statute. More importantly, the results of the report to be tendered to the court were crucial, intimately associated findings to assist the court in its judicial function of determining the defendant's proper place of confinement. Whether the defendant would be committed to an institution was inextricably intertwined with the defendant evaluators' report. Accordingly, this Court finds the function performed by the defendants was the variety for which absolute immunity was created. As such, this Court finds the defendants are entitled to absolute immunity.

## 2. Qualified Immunity

The defendants argue that the plaintiff's § 1983 claims must be dismissed because: (1) the plaintiff's allegations fail to support a § 1983 claim because they do not identify a Constitutional right that was violated; or (2) qualified immunity bars the claim. Section 1983 allows for a plaintiff to assert a claim against any "person" who, acting under color of state law, "depriv[ed] [another] of any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983. A plaintiff seeking to bring a claim under § 1983 must meet two requirements: (1) the conduct complained of was committed by a person acting under color of law; and (2) the conduct deprived the plaintiff of rights, privileges, or immunities secured to him by the Constitution and the laws of the United States. *See* **Wirth v. Surles**, 562 F.2d 319, 321 (4th Cir. 1977) (citing **Monroe v. Pape**, 365 U.S. 167 (1961)).

"In the absence of an insurance contract waiving the defense, the doctrine of qualified or official immunity bars a claim or mere negligence against a State agency not within the purview of the West Virginia Governmental Tort Claims and Insurance Reform Act, W.Va. Code § 29-12A-1 *et seq.*, and against an officer of that department acting within the scope of his or her employment, with respect to the discretionary judgments, decisions, and actions of the officer." Syl. Pt. 6, **Clark v. Dunn**, 195 W. Va. 272, 465 S.E.2d 374 (1995). "'A public official who is acting within the scope of his authority and is not covered by the provisions of W.Va. Code 29-12A-1 *et seq.*, is entitled to qualified immunity from personal liability for official acts if the involved conduct did not violate clearly established laws of which a reasonable official would have known . . . .' Syl., **State v. Chase**

8

*Securities, Inc.*, 188 W. Va. 356, 424 S.E.2d 591 (1992)." Syl. Pt. 3, *Clark*, 195 W. Va. 272.

As an initial matter, taking the well-pleaded facts in the Complaint as true, this Court must identify whether any statutory or constitutional rights were violated and then ask whether those rights were clearly established at the time of the violation. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *Hunter v. Town of Mocksville, N.C.*, __ F.3d __, 2015 WL 3651646, at *4 (4th Cir. 2015). This Court, in its discretion, may decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *M.C. ex rel. Crawford v. Amrhein*, 598 Fed.Appx. 143, 146 (4th Cir. 2015) (citing *Pearson*, 555 U.S. at 236).

This Court finds that any rights which may have been violated were not clearly established at the time. The defendants were clearly following the statutory scheme and court order with which they were presented. W.Va. Code § 27-6A-5(a) provides as follows:

> If, at any time prior to the expiration of the court's jurisdiction, the chief medical officer or responsible official of the mental health facility to which an acquitee has been ordered pursuant to subsection (e), section four of this article[1] believes that the acquitee is not mentally ill or does not have

---

[1] W.Va. Code § 27-6A-4(e) provides:
If the verdict in a criminal trial is a judgment of not guilty by reason of mental illness, the court shall determine on the record the offense or offenses of which the acquitee could have otherwise been convicted, and the maximum sentence he or she could have received. The acquitee shall remain under the court's jurisdiction until the expiration of the maximum sentence or until discharged by the court. The court shall commit the acquitee to a mental health facility designated by the department that is the least restrictive environment to manage the acquitee and that will allow for the protection of the public. Notice of the maximum sentence period with end date shall be provided to the mental health facility. The court shall order a qualified forensic evaluator to conduct a dangerousness evaluation to include dangerousness risk factors to be completed within thirty days of admission to the

9

significant dangerousness risk factors associated with mental illness, he or she shall file with the court of record notice of the belief and shall submit evidence in support of the belief to include a forensic evaluation dangerousness report conducted in like manner as said subsection and recommendations for treatment, including medications, that reduce or eliminate the dangerousness risk factors associated with mental illness. **The court of record shall hold a hearing within thirty days of receipt of the notice to consider evidence as to whether the acquitee shall be released from the mental health facility to a less restrictive environment.** Notice of the hearing shall be made available to the prosecuting attorney responsible for the charges brought against the acquitee at trial, the acquitee and his or her counsel and the mental health facility. **If upon consideration of the evidence the court determines that an acquitee may be released from a mental health facility to a less restrictive setting, the court shall order, within fifteen days of the hearing, the acquitee be released upon terms and conditions, if any, the court considers appropriate for the safety of the community and the well-being of the acquitee.**

(emphasis added).

In this case, the defendant evaluators assessed the plaintiff pursuant to court order in the manner proscribed by the above statute. It appears the court subsequently held a hearing upon receipt of the defendants' report, at which time Dr. Massoud presented

---

mental health facility and a report rendered to the court within ten business days of the completion of the evaluation. The medical director of the mental health facility shall provide the court a written clinical summary report of the defendant's condition at least annually during the time of the court's jurisdiction. The court's jurisdiction continues an additional ten days beyond any expiration to allow civil commitment proceedings to be instituted by the prosecutor pursuant to article five of this chapter. The defendant then shall be immediately released from the facility unless civilly committed.

evidence that the plaintiff was no longer a danger and that he could be released into the community. The next day, plaintiff was released. On these facts, this Court finds no constitutional violations. Accordingly, the defendants are entitled to qualified immunity.

Plaintiff alternatively argues that it was not the contents of the evaluation which harmed him, but rather Sharpe Hospital's "step down" policy which limited defendants Hill and/or Massoud's ability to recommend the plaintiff's immediate release. Thus, plaintiff asserts it was "the defendants' overarching policy and practice which violates the plaintiff's constitutional rights." [Doc. 19 at 6]. Plaintiff concedes that "[i]t is this policy, which denied the plaintiff of his due process of law and improperly continued his commitment – not a failure of the defendants to unilaterally release the plaintiff, which is the basis of the defendant's (sic) constitutional failures." [Id.]. This Court fails to appreciate how this policy somehow disrupted the above statutory framework. Regardless of the Hospital's policy, it lacked the authority to release the plaintiff without a court order. This claim fails.

**B.    State Law Claims**

This Court notes that it has dismissed the federal claims – the basis of this Court's jurisdiction. This Court declines to retain jurisdiction over the state claims. *See* ***Shanaghan v. Cahill***, 58 F.3d 106, 110 (4th Cir. 1995)(explaining that district courts "enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished.")

## **CONCLUSION**

For the reasons discussed above, this Court:

11

- **GRANTS** the defendants' Motions to Dismiss **[Docs. 13, 15]** as to the § 1983 claims in Counts 1 and 2;

- **GRANTS** the Motions to Dismiss **[Docs. 13, 15]** as to the § 1983 claims based on absolute and qualified immunity;

- **GRANTS** the defendants' Motions to Dismiss **[Docs. 13, 15]**

- **DISMISSES** the plaintiff's Complaint **[Doc. 1]**;

- **ORDERS** the Clerk to enter judgment in favor of the defendants; and

- **ORDERS** that this matter be **STRICKEN** from the active docket of this Court.

It is so **ORDERED**.

The Court directs the Clerk to transmit copies of this Order to counsel of record.

**DATED**: April 25, 2017.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE